DMP:JAM
F. #2019R01707

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

NIKOLAOS BOGONIKOLOS,
     also known as "Nikos,"

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

A F F I D A V I T   A N D
C O M P L A I N T   I N   S U P P O R T
O F   A N   A P P L I C A T I O N   F O R
A N   A R R E S T   W A R R A N T

(T. 18, U.S.C., §§ 554, 1349, 2 and 3551 et seq.)

No. 23-MJ-412

EASTERN DISTRICT OF NEW YORK, SS:

        Nicholas Milan, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting

as such:

Wire Fraud Conspiracy

        In or about and between January 2017 and May 2023, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant NIKOLAOS BOGONIKOLOS, also known as "Nikos," together with others, did

knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more

U.S. companies by means of materially false and fraudulent pretenses, representations and

promises, and for the purpose of executing such scheme and artifice, to transmit and cause to

be transmitted by means of wire communication in interstate and foreign commerce,

writings, signs, signals, pictures and sounds, to wit: electronic communications, emails and

other online communications and monetary transfers in and through the Eastern District of New York and elsewhere, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### Smuggling Goods from the United States

In or about and between January 2017 and May 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NIKOLAOS BOGONIKOLOS, also known as "Nikos," together with others, did knowingly and fraudulently export and send from the United States, merchandise, articles and objects, to wit: items on the Commerce Control List set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1, contrary to United States laws and regulations, to wit: Title 50, United States Code, Section 4819(a)(1), 4819(a)(2)(A)-(G) and 4819(b) and Title 15, C.F.R. §§ 736.2 and 746.8(a)(1), and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554(a), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.   Communications referenced herein that have been translated into English are in draft form.

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI")
and have been since 2018.   I am responsible for conducting and assisting in investigations
into the activities of individuals and criminal groups responsible for unlawful proliferation of
sensitive and military technologies, export control violations and espionage by foreign
governments and related criminal and counterintelligence activity.   Through my training,
education, and experience, I am familiar with the techniques and methods of operation used
by individuals involved in intelligence and criminal activities to conceal their behavior from
detection by law enforcement authorities.   I have participated in numerous investigations,
during the course of which I have conducted physical and electronic surveillance,
interviewed witnesses, examined financial records, executed court-authorized search
warrants and used other techniques to secure relevant information.

2.      I am familiar with the facts and circumstances set forth below from my
participation in the investigation, my review of documents obtained pursuant to the
investigation and reports of other law enforcement officers involved in the investigation.
When I rely on statements made by others, such statements are set forth only in part and in
substance unless otherwise indicated.

I.     <u>THE DEFENDANT</u>

3.      The defendant NIKOLAOS BOGONIKOLOS, also known as "Nikos,"
is a Greek national and the President of the Aratos Group ("Aratos"), a group of several
companies located in the Netherlands and Greece.   The Aratos website described the
company's "sectors of expertise" as including "Space Technologies," "Homeland Security,"
and "Blockchain," and advertised Aratos' affiliation with a number of technology, defense
and research institutions and organizations.   BOGONIKOLOS was described as the

"Founder of Aratos Group.   He has a mathematical background . . . and delivered post-graduate and doctorate research in Kharkov National Economic University, Ukraine."

4.      One of the companies within the Aratos group was ForceApp BV ("ForceApp"), a defense company based in the Netherlands.   On its website, ForceApp described itself as "implement[ing] leading-edge technologies aiming at providing effective homeland security and defense solutions," with "main areas of expertise" including "Space for Defense, Blockchain for Defense, Counter-Drone Systems, Simulation, as well as Special Solutions and Services designed for Armed Forces applications," as well as "activities on research and development aiming at leading the technological developments in defense and security sectors."   BOGONIKOLOS was listed as a "Strategic Advisor" for ForceApp and described as being "internationally recognized as a leader in innovation and a serial entrepreneur in the fields of information technology, space, defense and security.   He has a long experience as an Advisor to the European Commission, the European Parliament as well as to Governments worldwide.   He is the owner of many pioneer patents relating to internet technologies, artificial intelligence, and blockchain, both in the E.U. and the U.S.A., and a writer with extensive research and scientific activity in the fields of his expertise."

5.      BOGONIKOLOS and Aratos have participated in various projects and initiatives involving the North Atlantic Treaty Organization ("NATO"), of which both Greece and the Netherlands are members.   For example, in June 2021, an Aratos company, Aratos Systems BV, was a finalist in the NATO Innovation Challenge for space applications for security and defense.   According to a June 6, 2021 press release issued by Aratos and quoting BOGONIKOLOS, the Aratos proposal involved the use of "Artificial Intelligence and Blockchain Technology for the safety of space assets like satellites, spacecrafts etc."

II.     BACKGROUND REGARDING THE SERNIYA NETWORK

6.      OOO Serniya Engineering ("Serniya") was a wholesale machinery and equipment company based in Moscow, Russia.    Serniya headed an illicit procurement network operating under the direction of Russia's intelligence services (collectively, the "Serniya Network"), which evaded U.S. and Western sanctions to acquire sensitive military-grade and dual-use technologies for the Russian military, defense sector and research institutions.

7.      OOO Sertal ("Sertal") was a wholesale machinery and equipment company based in Moscow, Russia.    As described herein, Sertal operated within the Serniya Network and in turn utilized a network of front companies, shell entities and bank accounts throughout the world, including in the United States and the Eastern District of New York, to source, purchase and ship export-controlled items from the U.S. to Russia, either directly or through third-country transshipment points.

8.      On or about March 3, 2022, Serniya and Sertal were added to the U.S. Department of Commerce ("DOC"), Bureau of Industry and Security ("BIS"), Entity List, which is found at Title 15, Code of Federal Regulations, part 774, Supplement Number 4. The persons and companies on the Entity List are subject to individual licensing requirements and policies supplemental to those found elsewhere in the Export Administration Regulations ("EAR"), due to a determination that such persons have engaged in activities contrary to U.S. national security and/or foreign policy interests.

9.      Similarly, on or about March 31, 2022, pursuant to Executive Order 14024, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") added Serniya, Sertal and several other entities in the Serniya Network to the Specially

Designated Nationals and Blocked Persons List (the "SDN List"), which is published on OFAC's website.   According to OFAC's press release, the designation was part of "its crackdown on the Kremlin's sanctions evasion networks and technology companies, which are instrumental to the Russian Federation's war machine."   OFAC described Serniya as "the center of a procurement network engaged in proliferation activities at the direction of Russian Intelligence Services.   This network operates across multiple countries to obfuscate the Russian military and intelligence agency end users that rely on critical western technology.   Serniya and Moscow-based OOO Sertal work to illicitly procure dual-use equipment and technology for Russia's defense sector."   OFAC also designated several individuals and companies operating in the Serniya Network, including United Kingdom-based Majory LLP ("Majory"), United Kingdom-based Photon Pro LLP ("Photon Pro"), and Spain-based Invention Bridge SL, among others, identifying them as "front companies utilized by Serniya to facilitate its procurement of key equipment for the Government of the Russian Federation."

10.    Yevgeniy Grinin, a Russian national, worked for Sertal as its Technical Director and was an executive officer of Photon Pro.   On or about March 9, 2022, BIS added Photon Pro to the Entity List.   On or about March 31, 2022, pursuant to Executive Order 14024, OFAC added Grinin to its SDN List for "being a leader, official, senior executive officer, or member of the board of directors of Photon Pro LLP."

11.    Aleksey Ippolitov, a Russian national, was affiliated with the Serniya Network and the All-Russian Scientific Research Institute of Electromechanics, a Moscow-based research institute and a subsidiary of ROSCOSMOS, the Russian state space corporation, which developed satellites and military spacecraft.   Ippolitov was also

affiliated with the All-Russian Research Institute for Optical and Physical Measurements ("VNIIOFI").   VNIIOFI was added to the Entity List on April 7, 2022.

12.     Svetlana Skvortsova, a Russian national, worked for Sertal as Advisor to the General Director under the supervision of Grinin.

13.     On December 5, 2022, a federal grand jury in the Eastern District of New York returned a superseding indictment charging Grinin, Ippolitov, Skvortsova, and others with violations of: Title 18, United States Code, Section 371 (conspiracy to defraud to the United States); Title 50, United States Code, Section 1705(a) and (c) (conspiracy to violate the International Emergency Economic Powers Act ("IEEPA")); Title 18, United States Code, Sections 1349, 1343, and 1344 (conspiracy to commit wire fraud and bank fraud); Title 18, United States Code, Section 1956(h) (money laundering conspiracy); Title 18, United States Code, Section 1957(a) (laundering of monetary instruments); Title 50, United States Code, Section 4819(a) (conspiracy to violate the Export Control Reform Act ("ECRA")); Title 18, United States Code, Section 554(a) (smuggling goods from the United States); and Title 13, United States Code Section 305(a)(1) (failure to file export information).   See 22-CR-409 (S-1) (HG).

14.     As described below, records obtained from court-authorized search warrants, as well as other evidence, have revealed that BOGONIKOLOS has been involved in smuggling U.S.-origin military and dual-use technologies to Russia on behalf of the Serniya Network.   By concealing the true Russian end user, BOGONIKOLOS caused U.S. companies to file false electronic export information in the Automated Export System

("AES")[2] and unlawfully export U.S. goods to Russia.   Furthermore, for all of the
transactions described below, a check of the DOC license database revealed that
BOGONIKOLOS did not obtain the required export licenses to export U.S.-origin items to
Russia.

III.   SERNIYA'S RECRUITMENT OF BOGONIKOLOS AS A PROCUREMENT
       AGENT

       15.     In an email exchange on or about October 27, 2017, Sertal's
promotional director shared an assessment of BOGONIKOLOS' suitability as a Serniya
Network procurement agent with senior members of Serniya and Sertal, including Grinin and
Ippolitov, noting that BOGONIKOLOS was a "supporter of the Orthodoxy, including as the
basis of friendship with Russia."   The assessment noted that BOGONIKOLOS was ready to
work with Russia and that an in-person meeting with BOGONIKOLOS would be arranged in
Moscow.   Indeed, in an email exchange between a Serniya affiliate and BOGONIKOLOS
on December 27, 2017, BOGNIKOLOS was offered transport from the Moscow airport
when BOGNIKOLOS arrived the following day.   BOGONIKOLOS was also asked if he
would be able to visit "our laboratories the same day in the afternoon . . . at 18[:00] we have
a meeting with the buyer . . . The laser seems to have irrived [sic] in Moscow today!"   In a

_____

[2]     AES is the system used by U.S. exporters to electronically declare their international
exports, known as Electronic Export Information ("EEI"), to the Census Bureau to help
compile U.S. export and trade statistics. This information is also shared with BIS, the
Directorate of Defense Trade Controls of the Department of State, and other federal agencies
involved in monitoring and validating U.S. exports.   U.S. law requires that any international
shipment where a valid export license is required or where the commodity classified is over
$2,500 be logged in the AES via an EEI filing.   Failure to make an EEI filing or providing
false or misleading information on an EEI filing in the AES is a violation of 13 U.S.C. § 305.

subsequent message, BOGONIKOLOS was told "since the agenda will be a very sensitive one, we would ask that you come to that meeting alone."   In a photograph dated the following day, December 28, 2017, BOGONIKOLOS is seen with Moscow's Saint Basil's Cathedral in the background, depicted below:



16.     On or about January 29, 2018, Ippolitov sent an email to BOGONIKOLOS and directed him to work exclusively with Grinin for "security." BOGONIKOLOS responded that he understood given that Ippolitov sought to purchase "sensitive items."   The next day, on or about January 30, 2018, Grinin sent an email to BOGONIKOLOS and introduced himself as Ippolitov's "business partner from Moscow . . . I'm responsible for equipment and materials ordering for him [Ippolitov]."   Many of the subsequent communications between Grinin and BOGONIKOLOS show that

BOGONIKOLOS was aware that the items Grinin asked BOGONIKOLOS to procure were subject to U.S. export controls and other laws.[3]

17.    For example, in a February 20, 2018 email exchange, Grinin asked BOGONIKOLOS to obtain certain items because "[s]uppliers from US and EU refused to sell this specification to Russia without any explanation . . . maybe, we need to order equipment separately, to hide entire specification."    BOGONIKOLOS responded and asked Grinin to send the list of U.S. suppliers that Grinin had previously contacted.    Grinin provided BOGONIKOLOS with the European office and U.S. headquarters of a Minnesota-based company ("Minnesota Company 1") that makes precision measurement instruments. BOGONIKOLOS replied that he wanted Grinin to give him the names of additional products made by Minnesota Company 1 because "i need it to ask them [Minnesota Company 1] from different way and not exactly like your request."    Later in the conversation, BOGONIKOLOS told Grinin that "you should add 1-2 for other items for security reasons" to "simply not to compare order with your old request!"    Based on my training and experience, I assess that, in this message, BOGONIKOLOS offered to frustrate Minnesota Company 1's compliance efforts and obscure the fact that he was purchasing the items for the Serniya Network by altering the order from Grinin's prior "request."[4]

---

[3]    Records from Google also reflected that BOGONIKOLOS conducted multiple internet searches for information on U.S. sanctions.    For example, on October 7, 2022, BOGONIKOLOS conducted searches for "Netherlands illegal export to Russia police," "Netherlands illegal export to Russia," and "dutch police arrest for exports to Russia."

[4]    This transaction was listed as "Order 13" in the October 3, 2022 spreadsheet, described below.

18.     Similarly, BOGONIKOLOS sent Grinin a screenshot of a text message exchange between BOGONIKOLOS and a Photon Pro employee, dated November 7, 2019. In the exchange, BOGONIKOLOS said that he had to "sign export license . . . I mean that I sign that the items are only for Netherlands ;) . . . Sensitive case . . . For the same reason I cannot press the supplier."    The screenshot is depicted below:



Based on my training and experience and in the context of the investigation, I assess that BOGONIKOLOS advised the counterparty to the text message that he would falsify the export license by claiming the "items are only for Netherlands" and was unwilling to "press," or engage further, with the "supplier" to avoid detection.    On that same day, an Aratos employee emailed BOGONIKOLOS a blank end use statement and asked BOGONIKOLOS, "My friend, to check later today together what to right [sic]."    Regarding another order from

a U.S. company, in an email that was forwarded to BOGONIKOLOS, an Aratos employee

stated that the item was "for the Russians."

IV.   BOGONIKOLOS' UNLAWFUL PROCUREMENT OF EXPORT CONTROLLED
      TACTICAL MILITARY ANTENNAS

19.   In or about 2018 and 2020, BOGONIKOLOS unlawfully procured

export controlled tactical military antennas (the "Antennas") for the Serniya Network,

causing them to be unlawfully exported from the United States.   The Antennas were

manufactured by a Florida-based company ("Florida Company"), which described the

Antennas as "designed for tactical battlefield conditions," for "mounting on armored

vehicles," and "conform[ing] with a certain standard used by the armed forces of member

states of the North Atlantic Treaty Organization."   The Antennas are listed on the

Commerce Control List ("CCL"), set forth in Title 15, Code of Federal Regulations, part

774, Supplement Number 1.   Items listed on the CCL are categorized by Export Control

Classification Number ("ECCN"), each of which is subject to export control requirements

depending on destination, end use and end user.   The Antennas are controlled under ECCN

3A611.x for regional stability and national security reasons, and therefore required a license

to be exported to Russia.   In correspondence with the Florida Company, BOGONIKOLOS

and other Aratos employees falsely represented that the Antennas would be used by Aratos in

the Netherlands and not be reshipped, claiming that the Antennas would be used for

"recreational and tourism maritime vessels."

20.   Records obtained from the Florida Company reflected that Aratos

purchased two Antennas in 2018 and eight Antennas in 2020, with end use statements filed

with AES, falsely listing Aratos in the Netherlands as the end user.   In reality, emails

between Grinin, BOGONIKOLOS and others reflected that the Serniya Network was the true purchaser in Russia.

21.     Specifically, a pro forma invoice dated August 11, 2018 showed that Aratos transferred the two Antennas purchased from the Florida Company to Majory, one of the aforementioned Serniya Network front companies that was subsequently sanctioned by OFAC.   Similarly, Grinin's email account also contained an October 11, 2019 contract signed by BOGONIKOLOS, on behalf of Aratos, and Grinin, on behalf of the subsequently-sanctioned Serniya front company Photon Pro, for eight Antennas.   Another contract found in Grinin's email account, dated October 15, 2019, indicated that Photon Pro, through Grinin, sold eight Antennas to an individual at the Moscow-based "LTD Center."   Notably, this contract between Grinin and LTD Center was dated only four days after Grinin signed a contract for the identical quantity of Antennas with BOGONIKOLOS.   Grinin's email account also contained shipping documents showing the eight Antennas being delivered to a transshipment point in Hamburg, Germany, as well as an Aratos invoice for the eight Antennas, contained in an email dated April 8, 2020.   A May 21, 2020 email exchange between Grinin and other Serniya Network operatives confirmed that the Antennas had been delivered to "the Center" in Russia.   Notably, on March 9, 2022, BIS added "LLC Center," which has the same address as the "LTD Center" referenced in the aforementioned October 15, 2019 contract, to the Entity List.   See 15 C.F.R. § 744 Supp. 4.

V.     BOGONIKOLOS' PROCUREMENT OF QUANTUM COMPUTING AND NUCLEAR RESEARCH TECHNOLOGIES FOR THE SERNIYA NETWORK

22.     In or about January 2021, Ippolitov emailed Grinin and other Serniya Network affiliates a series of orders from a major Russian educational and research

organization involved in the development of quantum computing.    Per the orders, the requested items were to be used to develop "defense" and "dual use" "quantum technologies," and specifically to develop "prototype quantum cryptographic complex information security equipment" and "protected quantum communication networks [to solve] civil and military tasks in the conditions of warfare."[5]

23.    Procurement of three of these items—sophisticated lasers produced by a California-based manufacturer ("California Company 1")—was outsourced to BOGONIKOLOS and Aratos.    These lasers were export controlled and required a license for export from the U.S. to Russia.[6]

24.    Specifically, in emails between Ippolitov, Grinin and others, these lasers were designated as "F2," "F3," and "F4."    In a January 26, 2021 email to Skvortsova, Grinin wrote "F2, F3, F4—Kolya [a Russian diminutive of "Nicholas"]," indicating that BOGONIKOLOS would handle the order.    Indeed, the following month, in or about February 2021, an Aratos employee ordered the exact three lasers from California Company 1.

---

[5]    Quantum cryptography is a method of encryption that uses the naturally occurring properties of quantum mechanics to secure and transmit data.    Unlike traditional encryption, which involves complex mathematical computation, quantum cryptography utilizes the principles of quantum mechanics to encrypt messages, making decryption of quantum cryptography potentially impossible.

[6]    In a January 25, 2021 email from Ippolitov to Grinin and other Serniya Network individuals, Ippolitov listed the ECCNs for the lasers as "6A003.b and 6A003.b.2."

25. A series of emails relating to this transaction were forwarded to BOGONIKOLOS from Aratos employees. One such email was from an employee of California Company 1 to an Aratos employee on or about March 22, 2021, stating "[c]ould you please do me a favor and get the attached end user document filled in and using the letter head of the end use company, while I am still crunching numbers/pricing. Doing so will help us quite a bit in speeding up things and avoid delays afterwards, since basically all products we are discussing are export controlled."

26. BOGONIKOLOS also assisted in another transaction, which Ippolitov referred to as "Project 1851" for Russia's National Research Nuclear University ("MEPhI"). In an April 8, 2019 email to Grinin, the Serniya Network sought to acquire high-electron mobility transistors ("HEMT") manufactured by a French company and a North Carolina company (the "North Carolina Company").[7] HEMTs can be used in satellite and radio communications, and the HEMT produced by the North Carolina Company was controlled under ECCN 3A001.b.3.b.2. for, among other reasons, national security and regional stability, and therefore required a license for export to Russia.

27. On March 4, 2020, Aratos sent multiple invoices to Majory that listed the requested HEMTs and their respective ECCNs. In related email correspondence amongst Aratos employees on or about March 24, 2020, which BOGONIKOLOS was carbon

---

[7] This transaction was listed as "Order 44" in the October 3, 2022 spreadsheet, discussed below. In the spreadsheet, the "Export Controls" field was demarcated by a "YES" in red, and the entry had a notation under the item description reading "ECCN: 3A001.b.3.b.2."

copied on, an Aratos employee advised "[s]ince this product is probably under export control, as I remember, you use the same explanation as we had done before with that company: that we want this equipment for use in a radio and SATCOM installations for a communications unit for a project (confidential) of ours with HAI.   Perhaps it is needed that they send us an End User Form to complete.   If so, when you receive it let's complete it together."   In a March 27, 2020 email, BOGONIKOLOS reprimanded an Aratos employee, saying "We are the end users, make no mistake."   The employee responded, "I'll fix it."   A corresponding invoice from September 3, 2020 was obtained from Grinin's email account, showing a transfer of 30 HEMTs from Aratos to Majory for €90,000.

## V.   ADDITIONAL ILLICIT SHIPMENTS FOR THE SERNIYA NETWORK

28.   Records obtained from court-authorized search warrants of Aratos email accounts—including BOGONIKOLOS' account—revealed a variety of business records documenting Aratos' illicit activities with the Serniya Network.   Significantly, Aratos employees frequently emailed BOGONIKOLOS dozens of spreadsheets documenting and updating Aratos' transactions on behalf of and involving the Serniya Network.   The spreadsheets typically contain columns listing a description of the items being ordered and, for U.S.-origin items, occasionally list the applicable ECCN.   Other columns included the manufacturing company; the country of origin; the request and delivery dates; whether the order had been placed; price; profit; as well as "comments" and "status" columns for each entry.

29.   In the "comments" field, notations frequently referred to BOGONIKOLOS using his initials, "NB."   For example, in one spreadsheet, in an entry for an order of a variety of U.S.-origin pressure sensors, conditioning units and other electronics,

the comments field stated "NB sent out updated proforma with new quantities to client. Client sent us order verification."    In another entry for U.S. origin-electronic and atomic measuring equipment, the comments field states "No invoice prepared.    NB said it is ok." Some entries appeared to reference Grinin as "Ev," which are the first two anglicized letters of Grinin's first name, commonly spelled "Evgeniy."    For example, in one entry, the comments field stated, "NB to check first with Ev which type/configuration . . . NB sent PI to client.   Order in Progress."

30.     On or about October 3, 2022, an Aratos employee emailed BOGONIKOLOS a spreadsheet detailing purchases made by Aratos for the Serniya Network, with the most recent entry from August 2022—after Serniya and various front companies associated with Serniya were sanctioned by OFAC.   As described herein, each of the orders corresponded to Aratos invoices obtained during the investigation, showing each item being sent to either Majory or Photon Pro, both Serniya Network front companies. Numerous U.S. companies were listed in the "Company" and "Country of Origin" columns, including the aforementioned North Carolina Company, Minnesota Company 1, California Company 1 and the Florida Company.   One column was titled "Export Controls" and indicated whether the item sold was subject to U.S. or European export restrictions, with each field containing either "YES" in red or "NO" in green.

31.     For example, Order 40 in the spreadsheet was for a "CS-1 model: Low Noise Cesium Frequency Synthesizer, 9.192 GHz," which was produced by a Colorado-based company (the "Colorado Company") and controlled under ECCN 3A001.b.10 for, among other reasons, national security, and therefore required a license for export to Russia. The "Export Controls" field was demarcated by a "YES" in red.   Notably, a September 7,

2019 invoice from Grinin's email account relating to the sale of this item showed that the item was transferred from Aratos to Majory in exchange for €143,000.

        32.     Order 91 in the spreadsheet was for 20 analog-to-digital converters purchased from a Minnesota-based electronics distributor ("Minnesota Company 2"), which were controlled under ECCN 3A001a.5.a.5. The "Export Controls" field was demarcated by a "YES" in red. On or about February 12, 2020, Ippolitov, Grinin and Skvortsova received an email from urantrade2@gosmail.ru requesting the analog-to-digital converters—notably, in prior emails with Ippolitov and other Serniya Network affiliates, urantrade2@gosmail.ru contained a signature block listing "Military Unit 33949," which was part of the Russian Foreign Intelligence Service, known as the "SVR." A June 4, 2020 pro forma invoice from Aratos to Photon Pro and a corresponding payment receipt from Photon Pro to Aratos confirmed that the items were ordered and paid for by the Serniya Network. However, the April 30, 2020 invoice from Minnesota Company 2, which was sent to BOGONIKOLOS, listed Aratos in the Netherlands as the purchaser and end user, and contained the ECCN and a disclaimer that the item could not be re-exported to any other country or person.[8] Nevertheless, on or about May 11, 2020 an Aratos employee sent BOGONIKOLOS shipping documents, including a DHL receipt, showing that the items

---

[8]      The disclaimer reads, "These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. Government or as otherwise authorized by U.S. law and regulations."

were sent from the Netherlands to a shipping company in Hamburg, Germany that was commonly used by the Serniya Network to transship goods into Russia.

33.    Order 108 in the spreadsheet was for a "High power, Gallium Nitride (GaN) solid state power amplifier (6.0-12.0 GHz)" sold by a California-based military technology company ("California Company 2").   The "Export Controls" field was demarcated by a "YES" in red, and California Company 2 indicated that the item was controlled under ECCN 3A001.b.4.a.4.   BOGONIKOLOS was forwarded an invoice sent from an Aratos employee to an individual at California Company 2 showing that the shipping costs for the item were paid on August 23, 2022.   BOGONIKOLOS also signed a false end use statement that was provided to California Company 2, which agreed that the item would not be resold or reexported to any third party without the approval of California Company 2.

34.    Order 109 in the spreadsheet included three U.S.-origin, export-controlled items.   One was for a frequency synthesizer and a "Hi-Resolution Phase and Frequency Offset Generator" produced by the Colorado Company and controlled under ECCN 3A002 and 3A999, respectively, for national security, and therefore required licenses for export to Russia.   Order 109 also included a series of "microwave tunable notch filters," which are used to remove a frequency or narrow band of microwave frequencies and are controlled under ECCN 3A002.   The notch filters were manufactured by a Maryland-based company (the "Maryland Company") and sold to Aratos through a European distributor. Finally, Order 109 included two signal generators from a Washington-based engineering company (the "Washington Company").

35.    False end use statements were created for each of these orders.   On or about May 12, 2021, an Aratos employee emailed a "statement of assurance" to the European

distributor that listed Aratos in the Netherlands as the end user of the notch filters and stated that: the notch filters would be "used in our laboratory" for satellite and radio equipment development; the "end use is totally civilian"; and the target market is "Netherlands and Europe."   The "statement of assurance" also claimed that "we will not use [the notch filters] for development or manufacture of weapons, NEVER for weapons of mass destruction such as nuclear, biological and chemical weapons and missiles," and that "we will never re-sell, re-transfer, or re-export" without written consent from the European distributor "or initial manufacturer [the Maryland Company]."   The invoice and order confirmation from the European distributor contained the warning that the notch filters "come within the export regulations of the U.S.-government.   This means that the unit may not be exported without the manufacturer's permission."   The invoice and order confirmation confirmed that Aratos had paid for the notch filters.

36.     Similarly, on or about May 24, 2021, an Aratos employee sent an "end use statement" for the frequency synthesizer to the Colorado Company, signed by BOGONIKOLOS, claiming that Aratos in the Netherlands was the end user for "laboratory testing purposes" and confirming that the frequency synthesizer would not be re-exported or used for weapons development or testing.

37.     However, evidence from the investigation showed that the end user for the items from all three U.S. companies in Order 109 was the Serniya Network rather than Aratos.   In a February 16, 2021 email from Ippolitov to Grinin, titled "to purchase soon," Ippolitov requested a variety of items, including the aforementioned items from the Colorado Company, the Maryland Company and the Washington Company.   The email specified that the items were to be purchased as part of "Project 1845" for the All-Russian Scientific

Research Institute for Physical-Engineering and Radiotechnical Metrology ("VNIIFTRI"),

which was added to the BIS Entity List on October 4, 2022.   Skvortsova, using a Sertal

email domain, sent the order to BOGONIKOLOS.   Aratos billed Photon Pro €57,000 for

the notch filers from the Maryland Company; €156,000 for the items from the Colorado

Company; and €54,000 for the signal generators from the Washington Company in separate

invoices on April 23, 2021.   These invoices from Aratos to Photon Pro were emailed on

July 30, 2021 and were also carbon copied to BOGONIKOLOS.

      WHEREFORE, your deponent respectfully requests that an arrest warrant be

issued for the defendant NIKOLAOS BOGONIKOLOS, also known as "Nikos," so that he

may be dealt with according to law.

      IT IS FURTHER REQUESTED that this Court issue an order sealing, until

further order of the Court, all papers submitted in support of this application, including this

Affidavit and any arrest warrants issued, with the exception that the complaint and arrest

warrant can be unsealed for the limited purpose of disclosing the existence of, or

disseminating, the complaint and/or arrest warrant to relevant United States, foreign or

intergovernmental authorities, at the discretion of the United States and in connection with

efforts to prosecute the defendant or to secure the defendant's arrest, extradition or

expulsion.   Based on my training and experience, I have learned that criminals actively

search for criminal affidavits on the Internet and disseminate them to other criminals as they

deem appropriate, such as by posting them publicly through online forums.   Premature

disclosure of the contents of this Affidavit and related documents will seriously jeopardize

the investigation, including by giving targets an opportunity to flee or continue flight from

prosecution, destroy or tamper with evidence, change patterns of behavior and notify

confederates.

Nicholas Milan
Special Agent
Federal Bureau of Investigation

Sworn to before me this
2nd day of May, 2023

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK